# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2021

Lyle W. Cayce
Clerk

No. 20-11274

Philadelphia Indemnity Insurance Company,

*Plaintiff—Appellee*,

*versus*

Reytech Services, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-211

Before Stewart, Ho, and Engelhardt, *Circuit Judges*.
Per Curiam:*

This appeal arises out of the issuance of construction surety bonds. Plaintiff-Appellee alleges Defendant-Appellant breached the indemnity agreement. The district court granted summary judgment for plaintiff. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-11274

I.

In 2011, Plaintiff-Appellee Philadelphia Indemnity Insurance Company ("Philadelphia") entered into an indemnity agreement with defendants P.C. Contractors, L.L.C. ("PCC") and John Douglas Chase Patterson ("Patterson") (the "PCC Agreement"). The PCC Agreement named PCC as Principal and Philadelphia as Surety.

In 2013, Defendant-Appellant Reytech Services, LLC ("Reytech"), PCC, and Patterson executed an additional general indemnity agreement on behalf of the named Surety, Philadelphia (the "Reytech Agreement"). The signature blocks on the Reytech Agreement reflect that all three defendants—Reytech, PCC, and Patterson (collectively, the "Indemnitors")—executed the agreement as "Principal/Indemnitor," in favor of Philadelphia. The Reytech Agreement specifically identifies Reytech as Principal in the definitions section. Under the terms of the Reytech Agreement, Reytech is responsible for indemnifying Philadelphia from losses related to bonds issued on behalf of any Principal.

In 2015, Philadelphia issued performance bonds, payment bonds, and maintenance bonds on behalf of PCC (the "Bonds"). The Bonds name PCC as the Principal. After the Bonds were issued, PCC failed to pay bills or other indebtedness incurred in connection with the project for which the Bonds were issued. Specifically, Philadelphia received and/or is currently aware of claims in excess of $2,000,000.00 plus interest and attorneys' fees on the Bonds. After reviewing and paying claims in the amount of $1,759,965.08 in accordance with the obligations under the Bonds and an internal investigation for an accounting on expenditures, Philadelphia incurred losses in the amount of $1,929,582.09.

On December 26, 2018, Philadelphia sent a demand letter to the Indemnitors demanding that they, jointly or severally, deposit with

No. 20-11274

Philadelphia the accounted incurred loss in cash or other property acceptable as collateral security to protect Philadelphia from all losses on the Bonds. Despite this demand, Reytech refused to indemnify Philadelphia, arguing that PCC was not a Principal under the Reytech Agreement.

On March 5, 2020, Philadelphia brought its complaint against the Indemnitors seeking recovery for breach of the Reytech Agreement and common law indemnity. After PCC and Patterson failed to appear, an order of default judgment was entered against them on May 1, 2020. Reytech responded with a motion to dismiss under Rule 12(b)(6), which was denied on April 21, 2020. Reytech later filed a motion for summary judgment, which was also denied on August 13, 2020.

On October 21, 2020, Philadelphia filed its motion for summary judgment against Reytech to recover for the Bonds. The district court granted the motion on November 30, 2020, and entered final judgment in favor of Philadelphia. Reytech timely appealed.

## II.

We review the motion for summary judgment de novo, and we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). The interpretation of a contract is also reviewed de novo. *Nat'l Cas. Co. v. W. World Ins.*, 669 F.3d 608, 612 (5th Cir. 2012). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). We apply Texas law to interpret the contract. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309–310 (5th Cir. 2010).

No. 20-11274

III.

Reytech raises two issues on appeal. First, it argues that the district court erred in finding that PCC was a Principal under the Reytech Agreement. Second, it argues the district court erred by determining that the Reytech Agreement was not rescinded, superseded, or otherwise replaced by a subsequent indemnity agreement, in which PCC is not a party. Neither argument prevails.

### *Principal under the Reytech Agreement*

Reytech argues that it is not obligated to indemnify the Bonds under the Reytech Agreement because it is not obligated to indemnify for unrelated bonds. Reytech argues that PCC is not a Principal because it signed under the boilerplate term "Principal/Indemnitor," nor does PCC become a Principal under the definition's section (b)(iii), and interpreting the Reytech Agreement to include PCC as a Principal would be an "absurd result."

It is undisputed that the signature lines of the Reytech Agreement show both PCC and Reytech executing the Reytech Agreement as "Principal/Indemnitor." The Reytech Agreement defines Principal and Bonds as follows:

> b. Principal: (i) Reytech Services, LLC; (ii) any present or future, direct or indirect, subsidiary, successor, affiliate, or parent of any Indemnitor or Principal; and (iii) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others, whether or not said others are named herein.
> . . .
> e. Bond: All surety bonds, undertaking, recognizances, instruments of guarantee or other surety obligations … issued on behalf of any Principal by: (i) Surety. . .

4

No. 20-11274

Philadelphia argues that PCC became a Principal under the Reytech Agreement after PCC requested the issuance of the Bonds from Philadelphia, and PCC was a defined Principal under the Reytech Agreement by way of its signature designation. Under the terms of the Reytech Agreement, the Indemnitors jointly and severally agreed to "indemnify the Surety from any and all loss incurred as a result of issuing the Bonds."

Under Texas law, we "must give [a contract's] words their plain meaning, without inserting additional provisions into the contract." *Liberty Mut. Ins. Co. v. Hisaw v. Assocs. Gen. Contractors, Inc.*, 514 F.App'x 407, 411 (5th Cir. 2013) (quoting *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008)). We must also strive to "ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Id.* (citing *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006)).

Indemnity agreements are read as any other contract under Texas law. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). The Reytech Agreement is to be interpreted in accordance with the general rules of contract construction, with the primary goal of construction to give effect to the parties' intent as expressed in the terms of the contract. *See Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex. 2000); *Blanton v. Cont'l Ins. Co.*, 565 F. App'x 330 (5th Cir. 2014). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and we will construe the contract as a matter of law. *Id.* at 393.

No. 20-11274

The Bonds were issued a year-and-a-half after the Reytech Agreement was executed.  The signature line of the Reytech agreement identifies PCC and Reytech executing as a "Principal/Indemnitor."  Philadelphia issued the Bonds based on Reytech's agreement to indemnify it in the Reytech Agreement. Philadelphia's Surety Bond Claim Manager, Jennifer Leuschner, submitted a sworn affidavit that Philadelphia relied upon Reytech's promise of indemnification before issuing the Bonds.  Under the terms of the Reytech Agreement, upon request of a named Indemnitor to Philadelphia for the issuance of a Bond, the named Principal on that requested Bond becomes a Principal under the Reytech Agreement—and the requested Bond is a Bond in which the Indemnitors are jointly and severally liable.

The Reytech Agreement provides that Reytech agrees to indemnify and hold harmless Philadelphia from and against any loss sustained or incurred as a result of executing any bond or as a result of the failure of any principal or indemnitor to comply with the Reytech agreement or any other agreement.  While Reytech argues this evidence is only a "self-serving Affidavit," the record is void of rebuttal evidence to the contrary.  Reytech did submit a sworn declaration by Patterson, as an authorized representative of PCC, after default judgment had been entered against him and PCC.  But Reytech has not alleged or presented any evidence of fraud or lack of good faith on the part of Philadelphia.  Accordingly, in view of the plain meaning, we conclude, as a matter of law, PCC is a Principal under the Reytech Agreement, and thus, affirm the summary judgment.

### *Replacement Agreement*

Reytech additionally argues that it entered into a new general indemnity agreement with Philadelphia in 2016 that replaced the original Reytech Agreement.  PCC is not a party under the replacement agreement. Reytech argues, based on language in the 2016 agreement, that the

No. 20-11274

replacement agreement supersedes any prior agreement between the parties. The district court found the language of the 2016 agreement inadequate for terminating the 2013 Reytech Agreement because the terms of the Reytech Agreement required written notice by registered mail of an intent to terminate. No such notice occurred or has been alleged by the parties.

Further, the alleged replacement indemnity agreement was entered into a year after the issuance of the Bonds at issue, and PCC was not a party to the agreement. The other named parties in the 2016 agreement are not the original Indemnitors/Principals named in the Reytech Agreement. Merger occurs when the same parties to a prior agreement subsequently enter into a written integrated agreement covering the same subject matter. *Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 700 (Tex. App. 1993). "[B]efore one contract is merged into another, the last contract must be between the same parties as the first, must embrace the same subject matter, and must have been so intended by the parties." *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 768–69 (Tex. App.—El Paso 2004, no pet.). But even then, a written agreement does not supersede a previous written agreement "relating to the same subject matter if the agreements [are] such that [they] might naturally be made as a separate agreement[s]." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 899 (Tex. App.—Fort Worth 1997, writ denied).

Reytech has not shown that the parties intended the Reytech Agreement to be merged into the replacement agreement such that it would no longer have any obligation to indemnify Philadelphia on the Bonds. *See Kona Tech. Corp. v. s. Pac. Transp. Co.*, 225 F.3d 595, 612 (5th Cir. 2000). Accordingly, we affirm the finding by the district court that the Reytech Agreement was not rescinded, superseded, or otherwise replaced by a subsequent indemnity agreement.

7

No. 20-11274

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.